IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

FRANCOIS JOHNSON,

   Plaintiff,

vs.            No. 08-2052-STA-dkv

CARGILL, INC.,

   Defendant.

_____

ORDER GRANTING DEFENDANT CARGILL'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 72)
AND
ORDER OF DISMISSAL

_____

  On January 14, 2008, Plaintiff Francois Johnson and eight other individuals filed a joint pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.[1] (Docket Entry ("D.E.") 1). United States District Judge J. Daniel Breen issued an order on January 29, 2008 that, inter alia, severed the actions and directed the Clerk to open a new civil action for each plaintiff. (D.E. 3 at 2.) On April 21, 2008, Judge Breen entered an order dismissing Defendants Martin Crowder, Tim Campbell, Joe Sparks, and Amanda Jordan and to issue process for Cargill, Inc. ("Cargill") on Plaintiff's Title VII claims. (D.E. 6.)

---

  [1]  Plaintiff's claims under 42 U.S.C. § 1981, which prohibit racial discrimination in the making and enforcing of private contracts, are analyzed under the Title VII McDonnell Douglas/Burdine framework. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). The Court's conclusion that Johnson fails to establish a Title VII prima facie case governs the outcome of these issues, therefore, claims under § 1981 will not be addressed separately.

On May 21, 2008, the case was reassigned to the undersigned judge.

On June 10, 2008, Cargill filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 9.) On July 8, 2008, Plaintiff responded to the motion to dismiss. (D.E. 11.) On April 9, 2009, the Court entered an order granting Defendant Cargill's motion to dismiss Plaintiff's claim of retaliation and denied Defendant Cargill's motion to dismiss Plaintiff's claim of race discrimination. (D.E. 39.)

On July 30, 2009, Cargill filed a motion for summary judgment. (D.E. 50.) On August 28, 2009, Plaintiff filed his response. (D.E. 52.) On October 20, 2009, Cargill filed a motion for leave to file a reply to Plaintiff's response. (D.E. 58.) The motion was granted and on October 20, 2009, Defendant filed a reply. (D.E. 60.) On November 17, 2009, Plaintiff filed objections to Defendant's reply. (D.E. 61.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation

omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).

When ruling on a motion for summary judgment the court may consider "pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits." " Fed. R. Civ. P. 56(c). "Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit." Woodruff v. National Life Ins. Co., 2006 WL 2792204 (E.D. Tenn. 2006)(citing Guzman v. Denny's Inc., 40 F. Supp.2d 930, 935 n. 3 (S.D. Ohio 1999)). "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal Rule of Civil Procedure 56(e). Documents which do not meet those requirements cannot be considered by the court." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n. 20 (8th Cir. 2000); see also Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000)(a court may consider "properly authenticated and admissible documents or

exhibits" when evaluating a summary judgment motion); 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988)("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").[2]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function

---

[2] Documents submitted which do not comply with the requirements of Rule 56(e) must be disregarded. See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991); State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979). Plaintiff's response to Cargill's motion for summary judgment includes emails, company policies, photographs, and documents generated by the Tennessee Occupations Safety and Health Administration ("TOSHA"). These particular documents are offered without any supporting affidavit to verify their authenticity. The Court has reviewed the documents despite the fact that the documents were not properly authenticated.

is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

I. Relevant Facts

The relevant facts follow:[3]

### Johnson's Employment at Cargill and Knowledge of Anti-Harassment Policies

1. Plaintiff, Francois Johnson ("Johnson"), has worked for Cargill at its Second Street grain elevator (the "Facility") since July of 1999. (First Deposition of Francois Johnson ("First Dep."), D.E. 50, relevant excerpts attached as Exhibit A, at pp. 9:5-7, 21:12-16, 31:3-5.)

2. Cargill purchased the Facility from Continental Grain Company in July 1999. (Affidavit of Tim Campbell ("Campbell Aff."), D.E. 51, attached as Exhibit B, at ¶ 3.)

3. Prior to July 1999, Johnson worked at the same facility as an employee of Continental Grain. (First Dep. at pp. 28:19-

---

[3] The Court's task in evaluating Defendant's motion for summary judgment is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides,

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Plaintiff objects to paragraphs 28-47 but has not affixed to the "objections" copies of the portions of the record relied upon to evidence his dispute. The Court has attempted to construe the undisputed facts from Plaintiff's verified complaint, the record excerpts of deposition testimony, attached as exhibits to Defendant's motion and reply, and the verified exhibits attached to the affidavit of Timothy Campbell. Even after reviewing Plaintiff's unverified exhibits, the Court discerns no basis for Plaintiff's objections to these paragraphs. Therefore, the Court includes paragraphs 28-47 as undisputed.

    25.)

4. In his current position, Johnson is responsible for weighing grain brought to the Facility and dumping that grain into appropriate container bins, cleaning various areas of the Facility and performing other miscellaneous duties. (Id. at pp. 32:20-34:7; Second Deposition of Francois Johnson ("Second Dep."), D.E. 50, relevant excerpts attached as Exhibit C, at pp. 31:20-36:12.)

5. Johnson is a member of Teamsters Local 667 (the "Union") and has served as the union steward. (First Dep. at pp. 38:3-12, 66: 11-25.)

6. During the relevant time period, there were approximately thirteen production employees at the Facility. (Campbell Aff. at ¶ 4.)

7. All but one of those employees was African American. (Id.)

8. Throughout his employment, Johnson has been required to comply with Cargill's policies and procedures and the guidelines outlined in the collective bargaining agreement that governs the relationship between Cargill and the Union. (First Dep. at pp. 38:21-40:3.)

9. Johnson is aware of Cargill's policy against harssment. (Id. at pp. 40:4-23, 45:24-48:11.)

10. Cargill's policy against harassment directs any employee who believes that he or she has been subjected to alleged harassment or illegal discrimination to lodge a complaint with the Facility's Human Resources Manager, the Business Unit HR Manager or Cargill's Employee Relations Department. (Campbell Aff. at ¶ 5.)

11. This policy provides a clear avenue for employee complaints regarding alleged racial harassment and obligates Cargill to take timely steps to investigate and correct offending behavior following those complaints. (See id.)

12. Johnson is aware that he may file a Union grievance regarding any alleged harassment and/or discriminatory conduct. (First Dep. at pp. 42:3-43:13.)

13. Johnson has not complained about purported harassment to the Facility's management staff or filed a grievance relating to workplace harassment at any time during his employment with Cargill. (See id. at pp. 140:24-141:16.)

    Johnson's Lack of Evidence of Asbestos Exposure

14. Johnson has no knowledge that airborne asbestos fibers have been found within the Facility at any point in time. (Id. at pp. 77:21-78:11; Second Dep. at pp. 45:18-47:21, 51:10-

      52:5.)

15. Johnson has no knowledge that any material in the Facility has ever been found to contain asbestos. (First Dep. at pp. 77:21-78:11, 83:24-84:20; Second Dep. at pp. 45:18-46:11.)

16. Johnson has no evidence that Cargill discovered the presence of airborne asbestos fibers at the Facility at any time since the date it purchased the elevator. (First Dep. at pp. 73:3-74:19.)

17. In December 2006, Cargill removed broken floor tiles from an area of the Facility due to a concern that they may have contained asbestos. (Campbell Aff. at ¶ 8; see First Dep. at pp. 83:9-23.)

18. This removal was performed by an environmental remediation contracting company on December 13, 2006. (Campbell Aff. at ¶ 8.)

19. Cargill hired an environmental services company to conduct air monitoring during the removal. (Campbell Aff. at ¶ 8; see Second Dep. at pp. 46:24-47:21.)

20. This testing found that the air quality in the area of the floor tiles during their removal satisfied all applicable standards. (Campbell Aff. at ¶ 8; see Second Dep. at pp. 46:24-47:21.)

21. Johnson can point to no evidence providing that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos whatsoever and cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (First Dep. at pp. 77:21-78:11; 83:24-84:20; see Second Dep. at pp. 45:18-47:21.)

22. In February 2007, the Tennessee Occupational Safety and Health Administration ("TOSHA") conducted asbestos testing on materials in the Facility in response to an anonymous complaint. (Campbell Aff. at ¶ 11; see First Dep. at pp. 93:10-94:8.)

23. TOSHA sampled and tested each of seven areas that had been identified as areas of concern by the complainant through an independent laboratory. (Campbell Aff. at ¶ 11; see First Dep. at pp. 94:4-8.)

24. TOSHA informed Cargill that it did not detect asbestos fibers in any of the seven samples it took during the inspection. (Campbell Aff. at ¶ 11; see First Dep. at pp. 96:15-100:17.)

25. Johnson bases his belief that asbestos was present in the Facility on a warning sign that was posted in the vicinity

        of the broken floor tile in the fall of 2006. (Second Dep. at pp. 45:18-46:11.)

26. Pursuant to its asbestos safety and removal policies, Cargill posted this sign as a precautionary measure until the tiles could be removed. (Campbell Aff. at ¶¶ 6-7.)

27. Johnson concedes that no health care provider has informed him that he has been exposed to asbestos. (First Dep. at pp. 119:10-17.)

28. Johnson concedes that to the extent that he was exposed to asbestos, that exposure occurred in the course and scope of his employment. (Id. at pp. 104:17-106:3.)

<u>Johnson's EEOC Charge and Complaint</u>

29. On January 29, 2007, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Cargill had assigned him to work in areas contaminated with asbestos because of his race. (First Dep. at pp. 141:17-22; January 29, 2007 EEOC Charge ("Charge"), attached as Exhibit D.)

30. The Charge does not address any claim for alleged racial harassment. (Charge.)

31. On January 14, 2008, Johnson and eight other individuals filed a joint Complaint against Cargill, asserting that Cargill had discriminated against them on the basis of their race by requiring them to work in asbestos-contaminated areas and retaliated against them for complaining about alleged discrimination to TOSHA and/or the EEOC, among other claims. (D.E. 1.)

32. On January 29, 2008, the Court severed that action into nine separate lawsuits, including the instant case. (January 29, 2008 Order, D.E. 2.)

33. On June 10, 2008, Cargill moved to dismiss each of Johnson's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Cargill's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, D.E. 9.)

34. On April 9, 2009, the Court issued its Order Partially Granting and Partially Denying Defendant Cargill, Inc.'s Motion to Dismiss. (April 9, 2009 Order. D.E. 39.)

35. In that order, the Court noted that it construed Johnson's Complaint to assert "claims of race discrimination and retaliation. (Id.)

36. The Court denied Cargill's Motion with respect to the race discrimination claims but dismissed Johnson's retaliation claims. (Id.)

### Johnson's Claim for Race Discrimination

37. Johnson concedes there were no permanent Caucasian production employees working at the Facility at the time he contends he was exposed to asbestos. (First Dep. at pp. 134:9-135:21.)

38. During his first deposition, Johnson testified that he could not recall any Caucasian production employee who was not required to work in the alleged contaminated area. (Id. at pp. 135:10-21.)

39. Johnson now contends that one individual, Mike Thompson, was not required to work in close proximity to the area he claims was contaminated with asbestos. (Second Dep. at pp. 52:6-56:9.)

40. Johnson concedes that he does not have evidence regarding each area of the Facility in which Thompson worked and "wouldn't know" if Thompson worked in the allegedly contaminated areas during period in which Johnson did not work with him. (Id.)

41. Johnson testified that Thompson, unlike himself, was a non-union temporary employee. (Id.)

### Johnson's Purported Claim for Hostile Work Environment

42. Johnson specifically admits that he has never been subjected to any kind of physical harassment during his employment with Cargill and cannot point to any purportedly racist statements that were made to him. (First Dep. at pp. 137:7-139:22, 147:11-21.)

43. Johnson attempts to support a hostile work environment claim by pointing to a single act of alleged discrimination - Cargill's alleged requirement that he work in an area he claims was contaminated with asbestos. (Id. at pp. 137:13-138:23.)

44. Witnesses in the related cases have testified that at some point during his employment with Cargill, Johnson observed some racially offensive language scratched into a portable bathroom that was located outside of the Facility. (See Second deposition of Keith Howard, D.E. 50, excerpts attached as Exhibit E, at pp. 33:11-36:20.)

45. There is no evidence to suggest that anyone associated with Cargill was responsible for the language. (See Deposition of Avery Doss, D.E. 50, excerpts attached as Exhibit F, at pp. 104:10-106:6.)

46. The bathroom was used by truckers bringing grain to the Facility and other outside persons. (Id.)

>    47. Cargill removed the language after an employee lodged a complaint with management. (<u>Id.</u>)

## II. <u>Legal Analysis</u>

### A. <u>Racial Discrimination Based on Requirement that Johnson Work in Asbestos Contaminated Environment</u>

The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[4] That method has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

<u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Id.</u> at 253.

To establish a <u>prima facie</u> case of discrimination, Plaintiff must demonstrate:

---

   [4] Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. <u>Kocak v. Community Health Partners of Ohio, Inc.</u>, 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." <u>Amini v. Oberlin College</u>, 440 F.3d 350, 359 (6th Cir. 2006). Because the Court's review of the record finds no material evidence of direct discrimination the Plaintiff must establish a <u>prima facie</u> case of discrimination pursuant to the <u>McDonnell Douglas</u> formulation from which a discriminatory motive may be inferred.

>  (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and (4) circumstances indicated that his [or her] race played a role in the adverse employment action.

See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001). Put differently, element (4) requires Plaintiff to show, that for the same or similar conduct, he was treated differently than similarly situated employees. The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant respects. Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002). See also Clay v. United Parcel Service, Inc., 501 F.3d 695, 703 (6th Cir. 2007).

Johnson contends that Cargill assigned him to work in an area contaminated with asbestos and did not assign any nonminority workers to that area. The parties agree that Plaintiff is a member of a protected class and that he was qualified for his position. Defendant Cargill argues that Plaintiff fails to establish a prima facie case of race discrimination because he cannot demonstrate that he suffered an adverse employment action or that he was treated differently than similarly situated individuals of an unprotected class. (D.E. 50-1, p. 6.)

Defendant has provided the Court with the affidavit of Timothy Campbell, former Farm Services Croup Operations ("FSG") Leader at Cargill, who was responsible for the Cargill grain elevator where Plaintiff was employed from November 15, 1999, until January 3, 2008. (D.E. 51, p. 1.) Campbell states that Cargill employed thirteen (13) production employees during his tenure and all but one of those employees was African-American. (Id. at 2.) Campbell states that in

September 2006, Tom Zemanick, Cargill's United States Grain Plant Operations Manager, observed some broken floor tiles underneath bin 101 in the southeast corner of the elevator. (Id.) Even though no manager had information or knowledge that the tiles contained asbestos, Zemanick directed that the tiles be removed and a warning sign was posted. (Id.) An environmental remediation contracting company removed the broken tiles on December 13, 2006, and an environmental services company conducted air monitoring during the removal. (Id.) The air quality during removal satisfied all applicable standards. (Id.; Exhibit 2, p. 6.) Additional testing was performed by TOSHA in February 2007 and no asbestos fibers were detected. (Id. at 3; Exhibit 3.)

Johnson responds that he was required to sweep and clean broken floor tiles from 2000 until 2006. He contends the affidavit of Campbell is "false" and that air monitoring did not occur until after the tile removal or did not occur at all. He relies on the fact Cargill posted a warning sign and on an unauthenticated "courtesy notification for asbestos removal" which Defendant filed with the Memphis Shelby County Health Department that the floor tiles were to be removed in December 2006, as proof that the tiles contained asbestos. (D.E. 52, p. 2.) Johnson testified at his first deposition, however, that other than the sign, he has no evidence that the posted room had asbestos-containing material. (D.E. 50-3, p. 12.) Johnson testified that he can't dispute that Envirorem is a qualified asbestos removal company, and that he doesn't know what class "1 ACM" on the courtesy removal notice means, and has no evidence that asbestos was ever found at the Memphis facility. (D.E. 50-3, pp. 13-14.) Johnson testified at his second deposition that he

did not "know anything about [Pickering] to dispute" their air quality findings. (D.E. 50-3, p. 31.)

Asbestos is dangerous only when airborne and inhaled <u>See generally</u> 29 C.F.R. § 1910.1001(c)(establishing limits on the concentration of airborne asbestos to which an employee can safely be exposed). The "courtesty" notification does not establish that the tiles were found to contain asbestos and does not correlate to airborne asbestos which is measured by air monitoring. The Court notes that Johnson's unauthenticated exhibits also contain a statement that "a survey completed by a professional asbestos survey company in 2000 found no asbestos" on the Cargill site. (<u>Id.</u> at 11.)

Plaintiff has provided no affidavit or authenticated document which to rebut Campbell's affidavit or which establishes that the floor tiles contained asbestos, that he was exposed to asbestos fibers, or that the air monitoring revealed any airborne asbestos. Plaintiff attached unauthenticated Cargill "Work Practices" which state that if vinyl flooring **has not been determined** to be asbestos free, then the following restrictions must be observed: no sanding, no stripping with other than low abrasion pads, and no burnishing or dry buffing of floors without sufficient finish to keep the pad from contacting asbestos-containing material. (D.E. 52, p. 61 (emphasis added).) Plaintiff does not, however, allege that he was required to perform any prohibited activity.

Johnson testified in his first deposition that he could not recall if there were any Caucasian production workers at the Facility in the past five years or if any Caucasian workers were not required to work in the area which he contends was contaminated with asbestos. (D.E. 50-3, p.21.)  In the response to the motion for summary

judgment, however, Johnson alleges that "Mike Thompson, who was the focus of the 2001 discrimination lawsuit, was not required to work in these contaminated areas" and cites the Court to Mickens v. Cargill, No. 01-2535-BBD (W.D. Tenn. July 23, 2002). The claims from the case which involved Thompson, a white employee, were for racial discrimination by wage disparity and layoffs. Those claims were determined to be without merit because the wage disparity was corrected by Cargill upon the discovery of a payroll error and Thompson was not treated differently than the minority employees. (Id., D.E. 18.) The case provides no support for Johnson's present claims. Furthermore, Plaintiff testified at his second deposition that he could not recall if Thompson was a temporary or permanent employee, he "wouldn't know" if Thompson had to work in those areas, and if Thompson was a temporary employee, he wouldn't have been part of the union contract. (D.E. 50-3, p. 33.) Johnson's reply states that Thompson worked only two months for 1-2 days per week. (D.E. 52, p. 3.)

Because Plaintiff fails to establish by affidavits or other evidence that he suffered an adverse employment action or "was treated differently than similarly-situated non-minority employees," Mitchell, 964 F.2d at 582-83, Plaintiff fails to state a prima facie case of race discrimination. Bald assertions and conclusory statements fail to provide any factual support for Johnson's claim of race discrimination. Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996). There are no genuine issues of material fact as it relates to Plaintiff's claim of race discrimination, and Defendant is entitled to judgment as a matter of law.

B.  Racial Harassment & Hostile Work Environment

The elements of a Title VII hostile work environment claim are as follows:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcome harassment; 3) the harassment complained of was based upon race; 4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive working environment; and 5) there is some basis for employer liability.

Russell v. University of Toledo, 537 F.3d 596, 608 (6th Cir. 2008)); Clay, 501 F.3d at 706.

"Actionable harassment exists if 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Farmer v. Cleveland Public Power, 295 F.3d 593, 604 (6th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 2001). The standard for whether an employee has been subjected to a hostile work environment has both an objective and a subjective component. Newman v. Federal Express Corp., 266 F.3d 401, 405 (6th Cir. 2001). There is no Title VII violation if the conduct at issue "is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.[5]

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

---

[5] "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. at 21-22.

>humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance.

Id. at 23; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998) (recognizing the necessity of applying "[c]ommon sense" and "an appropriate sensitivity to social context"). As the Supreme Court states in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), Title VII is not meant to be a "general civility code." Id. at 788.

Defendant contends that Plaintiff cannot come forward with sufficient evidence to create a factual issue with respect to the fourth element of a prima facie case. Johnson contends that his assignment to the work area that he believes contained asbestos constitutes racial harassment and testified during his first deposition that that work assignment was the only harassment he could recall. (D.E. 50-3, pp. 21-22.) As set forth in the preceding section, Johnson has not established a genuine issue of material fact that his work area contained asbestos. Johnson admitted in his deposition that he was not subjected to any kind of physical harassment during his employment with Cargill. (D.E. 50-3, p. 22.)

Johnson alleges in his reply that his complaint alleged that "he and all the black employees were called boys and girls."[6] (D.E. 52, p. 5.) Plaintiff's reply also alleges that a supervisor made the statement that Plaintiff and other workers did not need a lunch break, "he would work us like mules." (Id. at 5.) He contradicts his deposition testimony and fails to provide any affidavit which

---

[6] The allegation in the original complaint pertained to Plaintiff Seay, not to Johnson. A plaintiff's knowledge of acts of harassment directed against other employees is not necessarily sufficient to establish a hostile work environment. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 226 (6th Cir. 2008).

substantiates these new allegations. Johnson's reply also relates an incident where racially offensive language was scrawled on a portable toilet located outside of the Cargill facility. (D.E. 52, pp. 3,5.) Johnson provides no affidavit and cites no documentary evidence to support this allegation. Notably, Johnson fails to allege that a Cargill employee was responsible for the writing and concedes the language was removed.[7] (Id.)

Johnson's allegations do not rise to the level of extreme conduct required to state a claim for a racially hostile work environment. There is no indication that the cited conduct unreasonably interfered with Plaintiff's work performance. Simply stated, extensive analysis is not required to reach the conclusion that the cited incidents did not constitute the type of sufficiently severe or pervasive hostile work environment to alter the conditions of Johnson's employment. Johnson has failed to come forward with evidence demonstrating he was subjected to a racially hostile work environment during his employment at Cargill and Defendant is entitled to judgment as a matter of law.

Defendant Cargill's motion for summary judgment (D.E. 50) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts

---

[7] Johnson admitted that he did not know who defaced the toilet. (Id. at 4.) Employers are generally not liable for non-employee conduct outside the workplace or for employee conduct within the workplace where the employer takes prompt remedial action upon learning of the offensive behavior. Fleenor v. Hewitt Soap Co., 81 F.3d 48, 51 (6th Cir. 1996).

in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to dismiss this case compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for

the Sixth Circuit within thirty (30) days.

    IT IS SO ORDERED this 17th day of March, 2010.

                              **s/ S. Thomas Anderson**
                              S. THOMAS ANDERSON
                              UNITED STATES DISTRICT JUDGE